COURT OF APPEALS OF VIRGINIA

Present:  Judges Kelsey, McCullough and Senior Judge Haley
Argued at Salem, Virginia

UNPUBLISHED

COMMONWEALTH OF VIRGINIA

                                             MEMORANDUM OPINION[*] BY
v.      Record No. 1672-12-2         JUDGE STEPHEN R. McCULLOUGH
                                             FEBRUARY 26, 2013

FRANCISCO BECERRA-OCHOA

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Jay T. Swett, Judge

Rosemary V. Bourne, Assistant Attorney General III (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

Adam C. Rhea for appellee.


The Commonwealth appeals from an order granting a motion to suppress the fruits of a search of Francisco Becerra-Ochoa's home. We conclude that the judgment below must be reversed by virtue of the good faith exception to the exclusionary rule.

BACKGROUND

Two Albemarle County police officers, one of whom was Officer Matthew McCall, arrested an individual at a local motel. This individual, Reuben C.,[1] had one quarter ounce of marijuana on his person. Reuben C. told the officers that he had purchased this marijuana earlier in the day from a man he knew as "J.B." and that J.B. lived in the Greenfield Trailer Park. According to Officer McCall, Reuben C. described the location of J.B.'s trailer and further described the trailer as having "a glass screen door, a large window in the front, and a small wood fence to the left side of the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Reuben C.'s full name is listed in the affidavit.

trailer." App. at 103. Reuben C. stated that "he had seen a large amount of marijuana in the trailer earlier in the day" and that "he had purchased marijuana from J.B. at that location for the past seven years." Id. at 103-04.

Officer McCall prepared an affidavit for a search warrant. He typed the following paragraph on a preprinted form:

> On December 31st 2011, Officer Joe Richards and I, Officer Matt McCall, arrested an individual name[d] Reuben C[.] on several outstanding warrants at the Super 8 motel in Albemarle County. At the time of his arrest, Reuben was in possession of a small bag of marijuana and a smoking device. Reuben stated that he purchased the marijuana today from a subject named "J.B." at a mobile home in the Greenfield trailer park. Reuben described the trailer and stated that it was the second trailer on the right just as you drive in from Berkmar Drive. Reuben stated that he purchased the quarter ounce of marijuana for $40 and observed a large amount of marijuana in plain view. Reuben went on to describe the trailer, stating that it had a large window in the front, had a glass screen door, and there was a small wooden fence around the left side of the trailer. Reuben stated that he has been purchasing marijuana from J.B. at the same trailer for over seven years. Your affiant has over thirteen years of law enforcement experience and has made over 100 narcotic related arrests.

Id. at 101.

The form contained two boxes to be checked. One box was to be checked for situations where the officer has "personal knowledge of the facts set forth in this affidavit." The other box was to be checked when the officer had been "advised of the facts set forth in this affidavit in whole or in part, by an informer." In that situation, the form provided that "[t]his informer's credibility or the reliability of the information may be determined from the following facts." Id. Beneath that sentence was a space for the officer to add text detailing the credibility of the informant or the reliability of the information supplied by the informant. Officer McCall checked only the box indicating that he had personal knowledge of the facts set forth in the

affidavit. He left blank the space provided in the warrant application to set forth a basis for the credibility of the informant or the reliability of the information supplied by the informant.

A search of Becerra-Ochoa's trailer yielded, among other things, a bag of marijuana, a digital scale, a plant grinder, and a number of smoking devices. Becerra-Ochoa was charged with possessing more than one-half ounce but less than five pounds of marijuana. He filed a motion to suppress, contending, among other things, that the search warrant should not have been issued because Officer McCall, in fact, did not have personal knowledge of the facts set forth in the affidavit and the informant's statements were not corroborated.

At a hearing on the motion to suppress, Officer McCall explained that he personally arrested the informant named in the affidavit and that it was from this informant that McCall received the information conveyed in the application for the search warrant. McCall acknowledged that he did not have personal knowledge of the facts conveyed to him by Reuben C. He explained that he did not check the box indicating the information was supplied by an informant because he believed that this box was reserved for confidential informants who are not named, whereas this informant was named in the affidavit. McCall had not met the informant prior to arresting him for possession of marijuana. There is no evidence to indicate that Officer McCall took any steps to corroborate the information supplied to him by the informant. The trial court found that the factual information conveyed in the affidavit "was all based on what [the informant] told Officer McCall when he was arrested."

Officer McCall further testified that the informant was shown a Google Earth photograph of the Greenfield Trailer Park, and the informant identified the defendant's trailer as the one from which he had purchased marijuana for a period of seven years. Officer McCall stated that he told the informant that offering information might help reduce a prison sentence. McCall, however, made no promises of leniency. This fact is not mentioned in the search warrant

affidavit.  Finally, Officer McCall admitted that, although the informant had identified the trailer's color as blue, it was actually green.

The trial court concluded that Officer McCall did not intentionally mislead the magistrate in filling out the affidavit.  The court observed that Officer McCall had not had any prior contact with Reuben C., nor did the officer conduct an investigation to verify the facts that Reuben C. provided.  The court found that the officer "should have known" that he needed to indicate that the information was not from his personal knowledge and should have known to provide information in the affidavit to allow the magistrate to assess the reliability of the informant.

The court further reasoned that

> The troubling issue here is the inability of this court to determine the basis for the magistrate's decision to issue the warrant.  Did the magistrate rely on the fact that the officer represented in the affidavit that the officer had personal knowledge of the facts that were set forth in the affidavit?  Or, did the magistrate conclude that the only basis for the facts in the affidavit came from [Reuben C.] and since the officer believed that [Reuben C.] was credible, then that was sufficient for the magistrate to issue the warrant.  Or, did the magistrate read the affidavit and make an independent determination that although the facts set forth were not based on the personal knowledge of Officer McCall, rather only on statements from [Reuben C.], the magistrate nevertheless made an independent determination that [Reuben C.] was credible and that the information he gave was reliable.
>
> It is this court's conclusion that it is not up to a reviewing court to guess why a magistrate chose to issue a search warrant based on an affidavit that on its face incorrectly states that the facts were based on the personal knowledge of the applicant.  It is not for this court to assume the magistrate overlooked the error and made an independent finding of probable cause that included a consideration of the reliability and credibility of [Reuben C.].  Accordingly, the court finds that the warrant was improperly issued by the magistrate.

App. at 106-07.

The court rejected the application of the good faith exception to the exclusionary rule on two grounds.  First, the court noted, the officer

- 4 -

> should have known that the information in the affidavit was incorrect as to the basis for the facts. Further, the magistrate did not perform his or her responsibility to require facts in the affidavit to either be personally known to the affiant or that the affiant provide information to allow the magistrate to perform an essential function of the office[:] to evaluate the credibility of the informant and the reliability of the information provided.

Id. at 108. The court granted the motion to suppress, from which order the Commonwealth appeals.

ANALYSIS

When the Commonwealth appeals a circuit court's decision to grant a motion to suppress, we review the evidence in the light most favorable to the defendant, the party who prevailed before the circuit court. See Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992). In the context of reviewing the reasonableness of a search under the Fourth Amendment, we defer to the factual findings of the trial court but "independently determine whether those findings satisfy the requirements of the Fourth Amendment." Kyer v. Commonwealth, 45 Va. App. 473, 479, 612 S.E.2d 213, 216-17 (2005) (*en banc*). We review *de novo* the "ultimate question" whether the officers violated the Fourth Amendment. Slayton v. Commonwealth, 41 Va. App. 101, 105, 582 S.E.2d 448, 449-50 (2003). Included in this *de novo* review is the legal determination of whether the good faith exception to the exclusionary rule applies. Adams v. Commonwealth, 48 Va. App. 737, 745, 635 S.E.2d 20, 24 (2006).

The Commonwealth argues that the affidavit in support of the search warrant establishes probable cause, but, even if it does not, the "good faith" exception the United States Supreme Court recognized in United States v. Leon, 468 U.S. 897 (1984), applies, and permits the prosecution to introduce the fruits of the search into evidence. We need not determine whether the affidavit

- 5 -

establishes probable cause.[2] We will assume, for purposes of argument, that it does not, and we proceed to examine the case under the good faith exception.

THE "GOOD FAITH" FRAMEWORK

Under the good faith exception to the general rule excluding unconstitutionally seized evidence, "the officer may rely upon the magistrate's probable cause determination and the evidence will not be excluded, even though the affidavit may not have provided the magistrate . . . with probable cause to issue the warrant." Colaw v. Commonwealth, 32 Va. App. 806, 810-11, 531 S.E.2d 31, 33 (2000) (citing Leon, 468 U.S. at 918-22).

As the Supreme Court has noted, however, "[t]he good-faith exception is not without limitations." Ward v. Commonwealth, 273 Va. 211, 222, 639 S.E.2d 269, 274 (2007). The exception does not apply

> (1) [W]hen the [magistrate] "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) when "the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)"; (3) when "an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) when "a warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

Id. at 222-23, 639 S.E.2d at 274 (citations omitted). At trial and on appeal, Becerra-Ochoa relies on exceptions (1) and (2).

A. THE RECORD ESTABLISHES NEITHER DELIBERATE FALSEHOOD<br>NOR A RECKLESS DISREGARD FOR THE TRUTH.

The trial court rejected any suggestion that the officer deliberately misled the magistrate. Therefore, we first address whether the officer acted in "reckless disregard of the truth," thereby

---

[2] A reviewing court certainly may first determine whether probable cause exists and then proceed to analyze whether the good faith exception applies. Leon, 468 U.S. at 924-25. Because this opinion is unpublished, we discern little value in addressing as a threshold matter whether the affidavit sufficed to establish probable cause to search.

precluding application of the good faith exception. Whether an officer acted in reckless disregard for the truth is a question of fact, and we will not reverse the trial court's finding unless it is "plainly wrong" or without evidence to support it. West v. Commonwealth, 16 Va. App. 679, 690, 432 S.E.2d 730, 737 (1993). The trial court reasoned that while it "does not find that the affiant intentionally misled the magistrate in stating he had personal knowledge of the facts, he should have known what it meant to indicate that he did." The court also noted that the officer "should have known that in the case of an informant, he had to provide the necessary information on the affidavit to allow the magistrate to determine the reliability of the informant." Assuming the trial court intended to make a finding of "reckless disregard," such a finding is plainly wrong.

It is true that Officer McCall did not check the box to indicate that the information came from an informant. The affidavit itself, however, indicates the source of the information. In the affidavit, the officer indicated that he arrested Reuben C. and that Reuben C. had marijuana on his person. Significantly, Officer McCall repeatedly included the qualifiers "Reuben described," "Reuben stated," "Reuben went on to describe," and again "Reuben stated." App. at 34. At no point did the officer signal that he was the source of the information. There is no reason to believe the magistrate would have been misled to conclude that the officer was the source of the information. The affidavit gives no indication that the officers conducted an investigation to corroborate the information they received from Reuben C. There is, therefore, no reason to conclude that the magistrate would have erroneously believed that the officer corroborated the information that came from Reuben C. Finally, Officer McCall did have personal knowledge of the arrest of Reuben C., that the arrest resulted in seizing marijuana from Reuben C., and that Reuben C. then provided information to Officer McCall about the source of the marijuana. Under these circumstances, the mistake by the officer in filling out the affidavit form does not rise to the level of a reckless disregard for the truth.

In Miller v. Prince George's County, 475 F.3d 621 (4th Cir. 2007), the United States Court of Appeals for the Fourth Circuit indicated that

> "[r]eckless disregard" can be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported."

Id. at 627 (quoting Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000)). See also Hart v. O'Brien, 127 F.3d 424, 449 (5th Cir. 1997) (for purposes of proving "reckless disregard for the truth," requiring evidence the officer "in fact entertained serious doubts as to the truth" of the information provided in the affidavit); Salmon v. Schwarz, 948 F.2d 1131, 1140 (10th Cir. 1991) (same).[3] These cases persuasively establish a higher threshold for reckless disregard than what this record establishes in the light most favorable to the defendant.

The officer may have been negligent in completing the affidavit, but negligence by an officer is not enough to place the fruits of the search outside of the good faith exception. See Franks v. Delaware, 438 U.S. 154, 171 (1978) ("[a]llegations of negligence or innocent mistake are insufficient" to establish reckless disregard); see also Leon, 468 U.S. at 914 (the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based and citing Franks).

In Herring v. United States, 555 U.S. 135, 144 (2009), the United States Supreme Court noted that "[t]o trigger the exclusionary rule, police [misconduct] must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Since neither intentional misconduct nor reckless disregard is present

---

[3] The standard for "reckless disregard for the truth" in a defamation action by a public figure requires that "the defendant in fact entertained serious doubts as to the truth of his publication," or "had a high degree of awareness of . . . probable falsity." Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 688 (1989).

here, suppression of the evidence is not warranted on that ground – and, as a consequence, the good faith exception applies.

## B. NO EVIDENCE ESTABLISHES THAT THE MAGISTRATE WHOLLY ABANDONED HER JUDICIAL ROLE.

We also find no basis upon which to conclude that the magistrate wholly abandoned her judicial role. From an *absence of evidence* about what the magistrate may have done or thought, the trial court concluded that the magistrate must have departed from her judicial role. This legal conclusion was in error. First, there is no presumption that magistrates have acted in dereliction of their duties. To the contrary, "[t]here is a presumption that public officials will obey the law." Hinderliter v. Humphries, 224 Va. 439, 448, 297 S.E.2d 684, 689 (1982). Second, the reach of the exclusionary rule is sharply limited with regard to judicial officers like magistrates. See Leon, 468 U.S. at 916-17 (citing three reasons why reliance on the exclusionary rule's "behavioral effects on judges and magistrates" is misplaced). It applies where, in fact, the magistrate has wholly abandoned her judicial role, not where there exists a mere supposition that she may have done so. Third, where, as here, the search has been conducted pursuant to a warrant, the defendant bears the burden of proving the search warrant invalid. Lebedun v. Commonwealth, 27 Va. App. 697, 710-11, 501 S.E.2d 427, 433-34 (1998). Where the record is barren of evidence concerning whether a magistrate acted properly, the search warrant must be upheld. See United States v. Perez, 393 F.3d 457, 465-66 (4th Cir. 2004) (suppression unwarranted where no evidence in the record supports the assertion that the magistrate abandoned his judicial role). Therefore, the defendant must establish that the magistrate wholly abandoned her judicial role to obviate the application of the good faith exception.

The Court in Leon provided an example of a situation where the magistrate wholly abandoned his judicial role. See Leon, 468 U.S. at 923 (citing Lo-Ji Sales, Inc., 442 U.S. 319). In Lo-Ji Sales, the magistrate actually joined the search party, thus "allow[ing] himself to become a

- 9 -

member, if not the leader, of the search party which was essentially a police operation." Lo-Ji Sales, 442 U.S. at 327. Stewart v. State, 711 S.W.2d 787 (Ark. 1986), furnishes another example. There, a judge signed blank search warrant affidavits and authorized a clerk to issue them upon application by the police. The Supreme Court of Arkansas found that this judge wholly abandoned his judicial role. Id. at 788. No such facts are shown on this record.

Becerra-Ochoa essentially contends that the magistrate abandoned her judicial role because, by issuing a search warrant on these facts, she must have acted as a "rubber stamp" for the police. The issuance of a search warrant, even if mistaken, does not by itself demonstrate that the magistrate ceased to be neutral and detached. This record simply does not support the conclusion that the magistrate abandoned her neutral and detached judicial role within the intendment of Leon.

CONCLUSION

Applying the good faith exception, we reverse the judgment of the trial court and remand the case for trial.

Reversed and remanded.