UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Lorish, Callins and White
Argued by videoconference


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION* BY
v.          Record No. 1094-25-4          JUDGE DOMINIQUE A. CALLINS
                                                         DECEMBER 9, 2025
KENNETH DAVID ROULHAC


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Susan J. Stoney, Judge

Matthew J. Beyrau, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on briefs), for appellant.

Robert A. Pomeroy, Assistant Public Defender, for appellee.


The Commonwealth appeals the order of the circuit court granting Kenneth David

Roulhac's motion to suppress evidence of child pornography discovered when police executed a

search of Roulhac's computer. The Commonwealth contends the affidavit in support of the

search warrant properly authorized the seizure and transport of Roulhac's computer to a

laboratory to conduct a search for digital evidence. The Commonwealth further contends that, in

any event, the "good faith" exception applies to preclude suppression of the evidence discovered

in the execution of a deficient warrant. Because we agree that the good faith exception would

apply to preclude exclusion of the digital evidence, if there were an error here, we reverse the

circuit court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

On April 8, 2023, Detective Choi investigated a peer-to-peer file-sharing network and homed in on a user sharing videos depicting child pornography.  Subpoenaing the user's information through an IP address, Detective Choi identified the user as Roulhac, residing on Elm Forest Way in Fairfax.

The detective sought a search warrant for Roulhac's home.  In the supporting affidavit Choi explained that "individuals who collect[ed] child pornography often save[d] the[] images in digital format" on computers and cell phones.  The detective further explained that because multiple devices are often found during a search, it is difficult to determine which device contains child pornography, thus it "may require agents to seize most or all computer items . . . to be processed later by a qualified analyst in a laboratory" and the "sorting process" is "impractical" to perform on-site.

The judge granted and signed the warrant.  The warrant authorized the search of Roulhac's residence and referenced an "Attachment A" as identifying the items to be seized. These items included in part:

> Any electronic evidence in relation to the use of any computer
> systems to facilitate crimes against children as defined in
> § 18.2-374.1:1.  Possession, reproduction, distribution, solicitation,
> and facilitation of child pornography, and any related crime
> involving the exploitation of children, in any form wherever it may
> be found . . . [including] within any computer, computer system,
> cell phone, and related peripherals.

The warrant authorized the officers "to seize said property . . . if they be found."  The court stapled the warrant and affidavit together.  Upon execution, Roulhac was served with the warrant signed by the judge, Attachment A which listed what was to be seized, and the affidavit.

The police seized three computers, two cell phones, two hard drives, and one tablet from Roulhac's home.  Although they returned one cell phone to Roulhac after a brief examination,

the police delivered the remaining devices for forensic examination. On one of the computers, a forensic examiner found multiple videos depicting child pornography. Roulhac was indicted on five counts of reproduction of child pornography, in violation of Code § 18.2-374.1:1(C), and ten counts of possession of child pornography, in violation of Code § 18.2-374.1:1(A).

Roulhac moved to suppress the evidence obtained from his computer. He argued the scope of the warrant did not extend to authorize the physical seizure of the electronic devices found in his home, nor did it permit police to search electronic data contained within any seized device. The circuit court granted Roulhac's motion, concluding that, although the search warrant authorized a search of the premises and the items identified in Attachment A, it did not permit the police to move the devices offsite or to search the device contents. The court held that while the language of the affidavit "sought permission" to perform an offsite search, "the search warrant itself d[id] [not] grant" that permission. The court further held that Code § 19.2-53 did not cure the deficiency in the warrant because the statute did not apply to "a search warrant for a residence with items in the residence." Finally, the court concluded the good-faith exception was inapplicable to the circumstances of this case. The Commonwealth appeals.

ANALYSIS

The Commonwealth's argument on appeal is two-fold. First, she argues the search warrant, taken with its supporting affidavit, authorized the police to search and seize all referenced devices. Second, she argues that, even were the search warrant deficient, the police relied on it in good faith to seize Roulhac's computer and take it offsite for forensic examination. We agree with the Commonwealth that the good faith exception applies to cure any deficiency in the search warrant.

A. *Standard of Review*

We begin our analysis by recognizing that, on review of the Commonwealth's appeal of an order granting a motion to suppress, we view the evidence in the light most favorable to Roulhac. *Commonwealth v. Peterson*, 15 Va. App. 486, 487 (1992). The circuit court's factual findings "are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." *Id.* Nonetheless, whether a motion to suppress has been properly granted "presents a mixed question of law and fact that an appellate court must review de novo." *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008). Similarly, "we review the trial court's determination that the good faith exception applied *de novo*." *Adams v. Commonwealth*, 48 Va. App. 737, 745 (2006).

B. *The Fourth Amendment and the Good-Faith Exception*

The Fourth Amendment protects against unreasonable searches and seizures. In the event of a Fourth Amendment violation, the resulting "evidence is subject to the exclusionary rule, which prohibits the introduction of evidence, tangible or testimonial, acquired during an unlawful search." *Carlson v. Commonwealth*, 69 Va. App. 749, 758 (2019). "The purpose of the exclusionary rule is to 'deter police misconduct rather than to punish the errors of judges and magistrates.'" *Adams v. Commonwealth*, 275 Va. 260, 272 (2008) (quoting *United States v. Leon*, 468 U.S. 897, 916 (1984)). Yet a court will not exclude such evidence "if the police acted 'in objectively reasonable reliance'" on a warrant subsequently found to be defective. *Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *Leon*, 468 U.S. at 922); *see also Collins v. Commonwealth*, 297 Va. 207, 212 (2019) (discussing *Herring* and the availability of the exclusionary rule in light of objectively reasonable reliance on a warrant).

We commonly refer to "objectively reasonable reliance" as the "good faith exception" to the exclusionary rule. Good-faith analysis considers the totality of the circumstances, including the

- 4 -

"sworn, written facts stated in the search warrant affidavit," as well as facts and circumstances within an executing officer's knowledge though not included in the affidavit. *Adams*, 275 Va. at 270. This approach serves the purpose of the exclusionary rule to "deter police misconduct" while avoiding the effect of an overly broad application disincentivizing police officers "acting in objective good faith." *Id.* at 272 (first quoting *Leon*, 468 U.S. at 916; and then quoting *Derr v. Commonwealth*, 242 Va. 413, 422 (1991)).

### C. *The Good Faith Exception Applies Here*

Here, we hold that if the search warrant was deficient, the police acted in good faith and thus the exception applies to validate the search and seizure of Roulhac's computer.[1]

We confine the good-faith inquiry "to the objectively ascertainable question whether a reasonably well trained [sic] officer would have known that the search was illegal despite the [judge's] authorization." *Id.* at 268 (quoting *Leon*, 468 U.S. at 922 n.23). To that end, we recognize four circumstances in which a court properly rejects good faith and suppresses evidence:

> (1) Where the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

*Colaw v. Commonwealth*, 32 Va. App. 806, 811 (2000) (quoting *Atkins v. Commonwealth*, 9 Va. App. 462, 464 (1990)). Absent a finding that one of these circumstances exists, evidence seized in good-faith reliance on a defective search warrant is admissible. *See Ward v. Commonwealth*, 273

---

[1] It is unclear from his briefing whether Roulhac challenges the validity of the warrant or merely its scope. Rather than choose for Roulhac, we hold that even if the warrant is invalid, to any extent, the good-faith exception applies. This constitutes the best and narrowest grounds for deciding this appeal. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (instructing that "[t]he 'best' answer . . . is the one with which the least number of jurists would disagree" and "[t]he 'narrowest' answer . . . is the one affecting the least number of cases").

Va. 211, 223 (2007); *Polston v. Commonwealth*, 255 Va. 500, 503 (1998) (characterizing the *Colaw* circumstances as a "test" by which a court determines the appropriateness of suppression).

Roulhac contends the warrant here was so lacking in specificity and particularity as to render it "facially deficient" and, thus, the executing officers' reliance unreasonable. We disagree. First, the warrant, on its face, appears to authorize the search. The language of the warrant expressly permits the officers to search Roulhac's home for the items identified in Attachment A and to "seize" those items. The items identified in the attachment include "Any electronic evidence" related to "crimes against children" that could be found "within any computer, computer system, cell phone, and related peripherals." Detective Choi's supporting affidavit indicates that the subject items would likely be stored on devices that would need to be seized and transported to a laboratory because the necessary search could not practically be conducted in Roulhac's home. Upon attaching an affidavit to a warrant, it becomes a part of the warrant when served as an attached unit. *See* Code § 19.2-56(A) ("The judge . . . shall attach a copy of the affidavit required by § 19.2-54, *which shall become a part of the search warrant* and served therewith." (emphasis added)); *Lebedun v. Commonwealth*, 27 Va. App. 697, 709 (1998) (recognizing that an attached affidavit cures a search warrant defective under Code § 19.2-56 because the supporting affidavit becomes part of the search warrant). Although the warrant does not explicitly state that police may seize computers and move them to a lab, the affidavit serves to supplement this information and renders the warrant facially sufficient. Construing the search warrant with Attachment A and the affidavit together, an officer could reasonably read the scope of the warrant to permit the removal of the computers to be searched at a lab.

Moreover, Attachment A included sufficient particularity to satisfy good-faith reliance. The attachment, explicitly referenced in the search warrant, states the place to be searched (Roulhac's home address) and the things to be seized ("[a]ny electronic evidence in relation to

- 6 -

. . . crimes against children"). The attachment further details at great length all the potential places to search within his home, including computers, floppy disks, flash memory drives, digital cameras, and myriad other electronic devices that could store digital and physical evidence related to child pornography. Beyond devices, Attachment A also lists books, magazines, films, videos, and negatives "containing any depictions of minors engaged in sexually explicit conduct." *Cf. Moyer v. Commonwealth*, 33 Va. App. 8, 26 (2000) (en banc) (applying good-faith exception to suppression where a warrant described things to be seized as "'photographs . . . depicting nudity and/or sexual activities involving children,' 'written materials (letters, diaries) . . . related to sexual conduct between juveniles and adults,' and 'books . . . and photographs depicting nudity and/or sexual activities of juveniles'" (alterations in original)). Because the search warrant references Attachment A, and together with Detective Choi's affidavit, the police could reasonably have read the documents alongside each other and concluded the scope of the warrant allowed them to remove the computers seized to a laboratory for search. *See United States v. Hurwitz*, 459 F.3d 463, 470 (4th Cir. 2006) ("The particularity requirement of the Fourth Amendment may be satisfied by cross-reference in the warrant to separate documents that identify the property in sufficient detail.").

Finally, Code § 19.2-53(B) permits any search and seizure of a computer to "include the search and seizure of *the physical components* and the electronic or digital information contained in any such computer." (Emphasis added). Subsection (C) of the statute goes further, authorizing "[a]ny search, including the search of the contents of any computer, . . . [to] be conducted in *any location* and . . . not limited to the location where the evidence was seized." (Emphasis added). Police officers could reasonably rely on these two statutory provisions to search and seize not only the contents within the computer, but the computers themselves, and to remove the computers for examination at a laboratory.

As a general matter, "[a]n officer's decision to obtain a warrant is prima facie evidence that he or she was acting in good faith." *Adams*, 275 Va. at 273 (quoting *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002)). Roulhac's attempt to analogize this case to *Riley v. California*, 573 U.S. 373 (2014), is unpersuasive. There, defendants challenged the warrantless search of their cell phones seized incident to their arrest. The United States Supreme Court held that, although officers could examine physical aspects of a cell phone incident to arrest to guard against their use as weapons, in the absence of relevant exigencies, they could not search the contents of the phone without a warrant. *Id.* at 403 ("Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant."). Here, the officers had a warrant on which, together with its attachment and supporting affidavit—and considering applicable statutes—they could reasonably rely to authorize their conduct. The circumstances of the search are readily distinguishable from those presented in *Riley*. As the warrant was not "so facially deficient that an executing officer could not reasonably have assumed it was valid," the circuit court erred in declining to apply the good-faith exception here. *Colaw*, 32 Va. App. at 811 (quoting *Atkins*, 9 Va. App. at 464).

## CONCLUSION

For the foregoing reasons, we reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*